# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# MCALLEN DIVISION

| | | |
|---|---|---|
| **SRI KALA, LLC dba JAVELINA MART** | § § | **Civil Action No. _____** |
| **VS.** | § § | |
| **UNDERWRITERS AT LLOYDS AND GREAT LAKES INSURANCE SE** | § § § | **JURY DEMANDED** |

## COMPLAINT

NOW COMES, Plaintiff SRI KALA, LLC (hereinafter referred to as "Plaintiff" and files this its *Complaint,* and in support states as follows:

## PARTIES

1. SRI KALA, LLC dba JAVELINA MART is an entity whose principal place of Business is in the State of Texas.

2. Defendant Underwriters at Lloyds is a foreign entity registered to engage in the business of insurance in the State of Texas. UNDERWRITERS is an entity incorporated in the United Kingdom with its principal place of business in London. The defendant may be served with process by serving citation and a copy of this Complaint by serving its agent of process at:

    Mendes and Mount, 750 Seventh Avenue, New York, NY 10019-6829

3. Defendant Great Lakes Insurance SE is a foreign insurance company registered to engage in the business of insurance in the State of Texas. GREAT LAKES is a German insurance company with its principal place of business located in Munich. The defendant may be served with process by serving citation and a copy of this Complaint by serving its agent of process at:

    Mendes and Mount, 750 Seventh Avenue, New York, NY 10019-6829

## JURISDICTION

4. This Honorable Court maintains subject matter jurisdiction, pursuant to 28 U.S.C. § 1332, based on complete diversity of citizenship between the parties. The amount in controversy exceeds $75,000.00.

## VENUE

5. Venue is proper in the Southern District of Texas because: the policy at issue was issued and delivered in Kleberg County, Texas; the property insured is situated in Kleberg County, Texas; PLAINTIFF'S losses occurred in Kleberg County, Texas, and all or part of the events made the basis of this lawsuit and giving rise to PLAINTIFF'S claims and causes of action occurred in Kleberg County, Texas, which is within the Southern District of Texas.

## FACTS

6. Plaintiff is the owner of a commercial business insurance policy (hereinafter referred to as "the Policy"), which was issued by Great Lakes Insurance SE and Underwriters at Lloyds.

7. Plaintiff owns the insured property, which is specifically located 1202 N. Armstrong Street, Kingsville, Texas 78363, in Kleberg County (hereinafter referred to as "the Property").

8. On or about June 6, 2019, a hailstorm and/or windstorm struck Kleberg County, Texas causing damages to homes and businesses throughout the region, including Plaintiff's business ("the Storm"). Specifically, Plaintiff's roof sustained extensive damage during the Storm. Plaintiff's business also sustained exterior damage during the Storm including, but not limited to, the exterior fascia, and significant damage to the interior, including damage to the office, the kitchen, the area behind the counter, the main floor, the main walk-in

refrigerator, and a closet. After the Storm and in compliance with the Policy, Plaintiff filed a claim with Defendants for the damages to its property caused by the Storm.

9. Plaintiff submitted a claim to DEFENDANTS against the Policy for roof damage, exterior damage and interior damage caused by the Storm. Plaintiff asked that Defendants cover the costs of repairs to the Property pursuant to the Policy.

10. After submitting the claim, Defendants assigned an adjuster, ADD ADJUSTER NAME AND/OR CLAIM CO (BOULDER) to evaluate damages to the Property. At the start of the process, which was on or around June 19, 2019, Defendant's adjuster told Plaintiff that the damage to the property would be fully covered and that Plaintiff had nothing to worry about. Defendant's adjuster knew this was a false statement when she made it because she knew, even before inspecting the home, that Defendants would not pay any amount for the covered damage. Defendants trains their adjusters to ignore covered damage and/or (depending on the circumstances) to calculate damages so that the total estimated cost of repairs is below a policyholder's deductible and/or outside of the policy coverage. Thus, Defendants' adjuster's statement that Plaintiff's damage to its property would be fully covered was false when they made it and she knew it was false.

11. The adjuster assigned by Defendants failed to reasonably perform an investigation into the damages sustained by the Plaintiff. Specifically, the adjuster spent less than one hour in assessing damages and then determined the damages to be under the Plaintiff's deductible and/or outside of the policy coverage, and no payment was issued. Much more time would have been needed to conduct an adequate inspection due to the size of the building and the extent of the damage the Plaintiff identified. Plaintiff identified six areas in the interior with damage caused by storm-created openings, which is damage covered by its insurance

policy. Those areas include the office, the kitchen, the area behind the counter, the main floor, the main walk-in refrigerator, and a closet. The office contains dark water stains on the ceiling due to storm created openings, which is damaged covered by Plaintiff's insurance policy. Similarly, the kitchen, the area behind the counter, the main floor, and the subject closet, also contain dark water stains on the ceilings. The main walk-in refrigerator sustained water leaks due to the storm created openings. The water damage to these interior areas, due to the storm created openings, is damaged covered by Plaintiff's insurance policy. Defendants' adjuster ignored these areas and only made a cursory inspection of the roof, the exterior and the interior. Defendants' adjuster failed to inspect the areas Plaintiff identified because Defendants train adjusters to conduct outcome-oriented inspections and in an expeditious fashion.

12. Plaintiff also identified damage on his roof, which itself is 37 squares. The inspection was done in an outcome-oriented way and in an expeditious fashion. The size of the roof would have necessitated over one and a half hours to do a proper and thorough inspection. Defendants' adjuster spent less than 30 minutes inspecting the roof and ignored several areas with damage due to the hail/windstorm, which is damage covered by Plaintiff's insurance policy.

13. As a result of the adjuster's unreasonable investigation, Plaintiff's claim was improperly adjusted. Defendants' calculation of the covered damage included only the roof and walk-in refrigerator because Defendant purposefully ignored areas with covered damage. The calculation resulted in $0.00 in estimated replacement cost. Defendant made no payment at all to Plaintiff for the covered damage. In fact, the Defendants train their adjusters to calculate just enough damage so that the total amount of replacement cost value will be

less than a policy holder's deductible and/or outside of the policyholder's coverage, regardless of the actual damage present in the home. Such a policy allows the Defendants to mandate that policyholders make repairs to their business, without requiring that Defendants make any payment to the policyholder for those repairs.

14. A subsequent estimate of the covered damage revealed that estimated repairs for Plaintiff's property are over $141,000, well above Plaintiff's deductible. The difference in repair estimates is due directly to Defendants purposefully overlooking covered damage to the roof, the exterior fascia, and significant damage to the interior, including damage to the office, the kitchen, the area behind the counter, the main floor, the main walk-in refrigerator, and the subject closet. In addition, the investigation performed by Defendants grossly underestimates the repair costs. Defendants' estimate for repairs fails to account for the full extent of damages and fails to account for the actual market value of labor and materials. Defendants purposefully limited their estimate of repairs for the Property so that Defendants would not have to pay the Plaintiff for the covered damages.

15. As a result of Defendants' conduct, Plaintiff did not receive payment it was entitled to under the Policy for their Storm damages and losses. As previously stated, when Plaintiff originally purchased the Policy issued by Great Lakes Insurance SE and Underwriters at Lloyds, Defendants' agent, Saira Somani at Abacus Insurance and Financial Services, LLC, represented on behalf of the Defendants that it would always conduct a fair and unbiased investigation of Plaintiff's claims against the Policy and promptly issue payment to Plaintiff for all properly covered hailstorm and windstorm damages to the Property. Ms. Somani knew this statement was false at the time she made it. Ms. Somani also knew that Defendants conducted outcome-oriented investigations and purposefully calculated

damage estimates below a policyholder's deductible, all to ensure that Defendants would not have to pay policyholders for covered damage. At no time did Defendants or any of its agents disclose to the Plaintiff that, in fact, it would conduct an unreasonable, unfair, and/or biased investigation of the claims that Plaintiff submitted against the Policy for hailstorm and/or windstorm damages to the Property and thereby underpay or deny Plaintiff's claim for properly-covered hail storm and/or windstorm damages to the Property. The failure to disclose this truth was a material omission by Defendants. As such, Plaintiff reasonably relied on Defendants' misrepresentations and omission upon purchasing their initial Defendants insurance policy, and but for Defendants' misrepresentations and omission, Plaintiff would not have purchased the Policy issued by Underwriters at Lloyds and Great Lakes Insurance SE and would have purchased an insurance policy from a different insurer to insure the Property against hailstorm and/or windstorm losses.

16. As indicated in the paragraphs above and below, Defendants wrongfully adjusted, on or around June 19, 2019, Plaintiff's claim for damages suffered during the Storm, even though the Policy provided for those losses. Defendants knew that it had conducted an outcome-oriented investigation, had purposefully ignored covered damage, and had purposefully miscalculated a repair estimate, and therefore knew that it was wrongfully refusing to pay for covered damage. Every day that passes without payment to Plaintiff for the covered damage is another day in which Defendants are purposefully delaying payment because it knows that Plaintiff has more extensive covered damage than was estimated.

17. Defendants failed to perform its contractual duties to adequately compensate Plaintiff under the terms of the Policy. Specifically, Defendant, through Boulder Claims, wrongfully denied Plaintiff's claim for covered damages even though all condition precedents to

recovery upon the Policy had been carried out by the Plaintiff. Defendants' conduct constitutes breach of the insurance contract between the Defendants and Plaintiff.

18. Defendants failed to make an attempt to settle Plaintiff's claim in a fair manner when its adjuster failed to perform a reasonable investigation into Plaintiff's damages. Specifically, the adjuster spent less than one hour in assessing damages and then determined the damages to be $0.00, well below the actual amount needed to repair all damage covered by the homeowner's policy. All this in spite of Defendants' being aware of the liability to the Plaintiff under the Policy. This constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. Tex. Ins. Code § 541.060(a)(2)(A).

19. Defendants refused to fully compensate the Plaintiff under the terms of the Policy for a covered loss. Specifically, Defendants performed an outcome oriented investigation of Plaintiff's claim, purposefully ignored covered damage, and purposefully calculated the damages to be outside of Plaintiff's policy coverage, which all resulted in a biased, unfair, and inequitable evaluation of Plaintiff's losses on the Property. This constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. Tex. Ins. Code § 541.060(a)(7).

20. When Plaintiff first purchased the Policy from Defendants through its agent, Sarai Somani, Defendants misrepresented to Plaintiff that under the Policy, Plaintiff would be entitled to payment from Defendants for damages caused by a covered loss, including hailstorm and/or windstorm losses, and that it would conduct an unbiased and reasonable investigation of any claim Plaintiff timely submitted against the Policy. This was a misrepresentation because Abacus knew that Defendants would not pay for such damage, as described above. If Plaintiff had known that Defendants were not going to pay for hail storm and/or windstorm damages that were covered under the Policy, Plaintiff would not

have purchased the Policy from Defendants, and instead would have purchased a different insurance policy insuring its Property from a different insurer. Defendants made material misrepresentations as to coverage under the Policy upon Plaintiff purchasing of the Policy that misled Plaintiff, including untrue statements of material facts and wrongfully concealed material facts necessary to make the Defendants' other representations not misleading, upon which Plaintiff reasonably relied to its detriment. Defendants' conduct constitutes a violation of the Texas Insurance Code, Misrepresentation of Insurance Policies. Tex. Ins. Code §§ 541.061(1), (2), (3), and (5) as well as violations of Texas Deceptive Trade Practices Act ("DTPA"), Tex. Bus. & Comm. Code §§17.41-.63.

21. Defendants failed to meet its obligations under the Texas Insurance Code regarding payment of claims without delay by dragging the process of obtaining a decision through months of bitter dispute, when Defendants already know that Plaintiff is entitled to coverage under the terms of the policy. Specifically, Defendants have delayed any payment for Plaintiff's claim. Defendants' conduct constitutes a violation of Texas Insurance Code, Prompt Payment of Claims. Tex. Ins. Code § 542.058.

22. From and after the time Plaintiff's claim was presented to Defendants, the liability of Defendants to pay the claim in accordance with the Policy was reasonably clear. However, Defendants have refused to pay Plaintiff for the claim, despite there being no basis whatsoever on which a reasonable insurance company would have relied to deny full payment. Defendants' conduct constitutes a breach of the common law duty of good faith and fair dealing.

23. Defendants Underwriters at Lloyds and Great Lakes Insurance SE knowingly and recklessly made false representations, as described above, as to the material facts and/or knowingly concealed all or part of material information from the Plaintiff.

24. As a result of Defendants Underwriters at Lloyds and Great Lakes Insurance SE conduct, Plaintiff was forced to retain the professional services of an attorney and law firm who are representing him with respect to these causes of action.

## CAUSES OF ACTION

25. Plaintiff is not making any claims for relief under federal law.

26. Defendants Underwriters at Lloyds and Great Lakes Insurance SE are liable to Plaintiff for intentional breach of contract, DTPA violations, as well as intentional violations of the Texas Insurance Code, and intentional breach of the common law duty of good faith and fair dealing.

## BREACH OF CONTRACT

27. Defendants Underwriters at Lloyds and Great Lakes Insurance SE conduct constitutes a breach of the insurance contract made between Abacus and Plaintiff.

28. Defendants Underwriters at Lloyds and Great Lakes Insurance SE failure and/or refusal to pay the adequate compensation as it is obligated to do under the terms of the Policy in question, and under the laws of the State of Texas, constitutes a breach of the Defendants' insurance contract with the Plaintiff.

## NONCOMPLIANCE WITH TEXAS INSURANCE CODE: UNFAIR SETTLMENT PRACTICES/PROMPT PAYMENT

29. Defendants Underwriters at Lloyds and Great Lakes Insurance SE conduct constitutes multiple violations of the Texas Insurance Code, Unfair Settlement Practices. Tex. Ins.

Code §§ 541.060(a), 541.061. All violations under this article are made actionable by Tex. Ins. Code § 541.151.

30. Defendants Underwriters at Lloyds and Great Lakes Insurance SE unfair settlement practice, as described above, of misrepresenting to Plaintiff material facts relating to the coverage at issue, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. Tex. Ins. Code § 541.060(a)(1).

31. Defendants Underwriters at Lloyds and Great Lakes Insurance SE unfair settlement practice, as described above, of failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of this claim, even though Defendants' liability under the Policy was reasonably clear, constitutes an unfair method of competition and un unfair and deceptive act or practice in the business of insurance. Tex. Ins. Code § 541.060(a)(2)(A).

32. Defendants Underwriters at Lloyds and Great Lakes Insurance SE unfair settlement practice, as described above, of failing to promptly provide Plaintiff with a reasonable explanation of the basis in the Policy, in relation of the facts or applicable law, for its denial of the claim, constitutes an unfair and deceptive act or practice in the business of insurance. Tex. Ins. Code § 541.060(a)(3).

33. Defendants Underwriters at Lloyds and Great Lakes Insurance SE unfair settlement practice, as described above, of refusing to pay Plaintiff's claim without conducting a reasonable investigation, constitutes an unfair method of competition and unfair and deceptive act or practice in the business of insurance. Tex. Ins. Code § 541.060(a)(7).

34. Defendants Underwriters at Lloyds and Great Lakes Insurance SE unfair or deceptive acts and/or practices of misrepresenting the Policy, as described above and otherwise herein, by: (1) making untrue statements of material fact, (2) failing to state material facts

necessary to make other statements it made not misleading, (3) making a statement(s) in a manner that would mislead a reasonably prudent person to a false conclusion of material fact, and which did mislead Plaintiff to false conclusion of material fact regarding coverage under the Policy, and/or (4) failing to make a disclosure as required by law and/or in accordance with another provision of the Insurance Code, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. Tex. Ins. Code § 541.061.

35. Defendants Underwriters at Lloyds and Great Lakes Insurance SE delay of the payment of Plaintiff's claim following its receipt of all items, statements, and forms reasonably requested and required, longer than the amount of time provided for constitutes a non-prompt payment of this claim. Tex. Ins. Code § 542.058.

## DTPA VIOLATIONS

36. Defendants Underwriters at Lloyds and Great Lakes Insurance SE conduct constitutes multiple violations of the DTPA. Tex. Bus. & Comm. Code §§17.41-.63. Plaintiff is "an individual, a partnership, or a corporation" that sought or acquired goods or services by purchase or lease from Defendants Underwriters at Lloyds and Great Lakes Insurance SE, and therefore qualifies as a consumer under the DTPA. Tex. Bus. & Comm. Code §17.54(4). Plaintiff have met all the conditions precedent to bringing this cause of action against Defendants Underwriters at Lloyds and Great Lakes Insurance SE. Specifically, Defendants Underwriters at Lloyds and Great Lakes Insurance SE violations of the DTPA include, without limitation, the following matters:

    A.   Defendants Underwriters at Lloyds and Great Lakes Insurance SE actions, as described in this petition, are unconscionable in that Defendant's actions took advantage of Plaintiff's lack of knowledge, ability, and experience to a

      grossly unfair degree. Defendant's unconscionable conduct gives Plaintiff a right to relief under section 17.50(a)(3) of the DTPA.

    B.    Defendants Underwriters at Lloyds and Great Lakes Insurance SE conduct, acts, omissions, and failures, and described in this petition, are unfair practices in the business of insurance in violation of section 17.50(a)(4) of the DTPA.

37. All of the above-described acts, omissions, and failures of the Defendants Underwriters at Lloyds and Great Lakes Insurance SE are a producing cause of Plaintiff's damages as described in this petition. All of the above-described acts, omissions, and failures of the Defendants Underwriters at Lloyds and Great Lakes Insurance SE were committed "knowingly" and "intentionally" as those terms are defined by the Texas Deceptive Trade Practices Act.

## BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

38. Defendants Underwriters at Lloyds and Great Lakes Insurance SE conduct constitutes a breach of the common law duty of good faith and fair dealing owed to insureds in insurance contracts.

39. Defendants Underwriters at Lloyds and Great Lakes Insurance SE failure, as described above, to adequately and reasonably investigate and evaluate Plaintiff's claim, although, at that time, Defendants Underwriters at Lloyds and Great Lakes Insurance SE knew or should have known by the exercise of reasonable diligence that its liability was reasonably clear, constitutes a breach of the duty of good faith and fair dealing.

## KNOWLEDGE

40. Each of the acts described above, together and singularly, was done "knowingly," as that term is used in the Texas Insurance Code and was a producing cause of Plaintiff's damages described herein.

## DAMAGES

41. Plaintiff would show that all of the aforementioned acts, taken together or singularly, constitute the producing cause of the damages sustained by the Plaintiff.

42. As previously mentioned, the damages caused by the June 6, 2019, hailstorm and/or windstorm have not been properly addressed or repaired in the months since the Storm, causing further damage to the Property, and causing undue hardship and burden to the Plaintiff. These damages are a direct result of Defendants' mishandling of Plaintiff's claim in violation of the laws as set forth above.

43. For breach of contract, Plaintiff is entitled to regain the benefit of their bargain, which is the amount of their claim, together with attorney's fees.

44. For noncompliance with the DTPA and Texas Insurance Code, Unfair Settlement Practices, Plaintiff is entitled to actual damages, which includes the loss of the benefits that should have been paid pursuant to the Policy, mental anguish, court costs, and attorney's fees. For knowing conduct of the acts described above, Plaintiff asks for three times their actual damages. Tex. Ins. Code § 541.152.

45. For noncompliance with the Texas Insurance Code, Prompt Payment of Claims, Plaintiff is entitled to the amount of their claim, as well as ten (10) percent interest per annum on the amount of such damages claimed, together with attorney's fees.

46. For breach of the common law duty of good faith and fair dealing, Plaintiff is entitled to compensatory damages, including all forms of loss resulting from the insurer's breach of duty, such as additional costs, economic hardship, losses due to nonpayment of the amount the insurer owed, exemplary damages, and damages for emotional distress.

47. For the prosecution of this claim, Plaintiff has been compelled to engage the services of the attorney whose name is subscribed to this pleading. Therefore, Plaintiff is entitled to recover a sum for the reasonable and necessary services of Plaintiff's attorney in the preparation and trial of this action, including any appeals to the Court of Appeals and/or the Supreme Court of Texas.

## JURY DEMANDED

48. Plaintiff previously requested that all causes of action herein be tried before a jury consisting of citizens residing in Kleberg, County, Texas. Plaintiff tendered the appropriate jury fee.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that upon trial hereof, said Plaintiff has and recover such sums as would reasonably and justly compensate it in accordance with the rules of law and procedure, as to actual damages, treble damages under the Texas Insurance Code, and all punitive and exemplary damages as may be found. In addition, Plaintiff requests the award of attorney's fees for the trial and any appeal of this case, for all costs of Court on their behalf expended, for prejudgement and postjudgement interest as allowed by law, and for any other and further relief, either at law or in equity, to which it may show itself justly entitled.

Dated: March 19, 2021

Respectfully submitted,

*/s/ Omar Ochoa*
Omar Ochoa
S.D. Tex. Bar No. 2081960
**OMAR OCHOA LAW FIRM PC**
121 N. 10th Street
McAllen, Texas 78501
Tel: (956) 630-3266
oochoa@omarochoalaw.com

*/s/ Victor Rodriguez*
Victor Rodriguez
*Of Counsel*
S.D. Tex. Bar No. 562260
**VICTOR RODRIGUEZ LAW FIRM PLLC**
121 N. 10th Street
McAllen, Texas 78501
Tel: (956) 630-3266
victor@vrodriguezlaw.com

*Attorneys for Plaintiff*